# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JEFF PERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JERICO PICTURES, INC. d/b/a NATIONAL PUBLIC DATA,<br><br>Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeff Perry ("Plaintiff") individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Jerico Pictures, Inc. d/b/a National Public Data ("NPD" or "Defendant"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons whose sensitive personally identifiable information ("PII")[1] was exposed in a data breach in or around April 2024 (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard PII that it collected and maintained. Upon information and belief, more than 2.9 billion consumers' information were affected by the Data Breach, in which sensitive personal information, including names, current and past addresses (spanning at least the last three decades); Social Security numbers; information about parents, siblings, and other relatives; and/or other personal information, were exposed on the dark web.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

3. NPD is a background check company based out of Coral Springs, Florida that scrapes consumers personally identifying information from non-public sources.[2]

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations to keep Plaintiff's information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. In or around April 2024, the hacker group USDoD gained access to NPD's network and was able to exfiltrate unencrypted PII of billions of individuals whose data is stored on NPD's network.[3]

6. On April 8, 2024, USDoD listed NPD on a popular underground forum, *Breached*, hosted on the dark web.[4] Upon information and belief, NPD's data was later sold on the dark web to cybercriminals.[5]

7. Plaintiff's claims arise from Defendant's failure to safeguard PII it collected and stored, and its failure to provide timely notice of the Data Breach.

8. Defendant failed to take precautions designed to keep consumers' PII secure.

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the PII that it collected safe and secure from unauthorized access. Defendant collected, used, and derived a benefit from the PII, yet breached its duty by failing to implement and/or maintain adequate security practices.

10. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have

---

[2] Jessica Lyons, *Crooks threaten to leak 3B personal records 'stolen from background check firm* available at https://www.theregister.com/2024/06/03/usdod_data_dump/ (last visited August 11, 2024).
[3] *Id.*
[4] *Id.*
[5] *Id.*

lost the ability to control their private information and are subject to an increased risk of identity theft.

11. Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

12. As a result of the Defendant's inadequate digital security and notice process, Plaintiff and Class Members' PII was exposed to criminals. Plaintiff and the Class have suffered, and will continue to suffer, injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

13. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

14. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence per se; and unjust enrichment.

15. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and

stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

*Plaintiff*

16. Plaintiff Jeff Perry is a citizen and resident of Evergreen Park, Illinois. On July 30, 2024, Plaintiff received an identity monitoring alert through Chase Credit Journey indicating his Social Security number was exposed through the website nationalpublicdata.com. As a consequence of the Data Breach, Plaintiff has experienced an uptick in spam calls and emails. Furthermore, he has been forced to, and will continue to, invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud. As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm.

*Defendant*

17. Defendant Jerico Pictures Inc. d/b/a National Public Data is a Florida corporation with its headquarters and principal place of business located at 1801 NW 126th Way, Coral Springs, Florida 33071.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

19. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in Coral Springs, Florida.

4

20. Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

21. NPD is a background check company that obtains personal information from public and nonpublic databases, court records, state and national databases and other repositories.[6]

22. In the ordinary course of its business practices, Defendant collects, stores, maintains, and uses consumers PII.

23. Upon information and belief, Defendant collected and stored PII from Plaintiff and Class Members, which it was obligated to keep safe, confidential, and that the privacy of that information would be maintained.

24. Plaintiff and Class Members had a reasonable expectation that Defendant, in collecting and storing their PII, would comply with its obligations to keep such information confidential and secure from unauthorized access.

25. As a result of collecting and storing the PII of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' PII from disclosure to third parties.

### B. The Data Breach

26. In or around April 2024, the hacker group USDoD gained access to NPD's network, and was able to exfiltrate unencrypted PII of billions of individuals whose data is stored on NPD's

---

[6] Duncan Riley, *2.7B records stolen from National Public Data released for free on hacking site*, https://siliconangle.com/2024/08/12/2-7b-records-stolen-national-public-data-released-free-hacking-site/ (last visited August 12, 2024).

5

network.[7]

27. On April 8, 2024, USDoD listed NPD on a popular underground forum, *Breached*, hosted on the dark web.[8] USDoD initially offered the stolen data for sale for $3.5 million.[9] The data was later released for free on the hacking site *Breach Forums*.[10]

28. The Data Breach is believed to have exposed the following types of sensitive personal information: Individuals' full names, addresses, and address history going back at least three decades, Social Security numbers, and family members information.[11]

29. Indeed, Plaintiff received a notification from his identity theft protection service that his Social Security number was compromised and found on the dark web as a direct result of the "National Public Data" Data Breach.

30. Defendant has failed to provide Plaintiff and Class Members with timely and adequate notice including, but not limited to, information about how the Data Breach occurred, specific dates it occurred, or when Plaintiff's and Class Member's information was compromised.

31. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

C. **Defendant's Failure to Prevent, Identify and Timely Report the Data Breach**

32. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

---

[7] Swagath Bandhakavi, *National Public Data breach sees 2.7 billion sensitive records exposed*, https://techmonitor.ai/technology/cybersecurity/national-public-data-breach (last visited August 12, 2024).
[8] Jessica Lyons, *Crooks threaten to leak 3B personal records 'stolen from background check firm* available at https://www.theregister.com/2024/06/03/usdod_data_dump/ (last visited August 11, 2024).
[9] Duncan Riley, *2.7B records stolen from National Public Data released for free on hacking site*, https://siliconangle.com/2024/08/12/2-7b-records-stolen-national-public-data-released-free-hacking-site/ (last visited August 12, 2024).
[10] *Id.*
[11] *Id.*

33. The PII that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

34. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[12] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard consumers' sensitive personal information.

35. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[13] Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

36. Despite this guidance, Defendant has yet to provide any form of notice to consumers impacted by the Data Breach

D.   **The Harm Caused by the Data Breach Now and Going Forward**

37. Victims of data breaches are susceptible to becoming victims of identity theft.

38. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[14]

---

[12] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited August 12, 2024).
[13] *Id.*
[14] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited August 12, 2024).

39. The type of data that was accessed and compromised here – such as, full names and Social Security numbers – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

40. Plaintiff and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

41. Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

42. When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, the stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[15]

43. For example, when the U.S. Department of Justice announced their seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is their pervasiveness.  As data breaches in the news continue to reveal, PII about employees, customers and the public are

---

[15] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited August 12, 2024).

housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[16]

44. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[17] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[18]

45. A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card. An individual cannot obtain a new Social Security number without significant work. Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number. Even then, however, obtaining a new Social Security number may not suffice. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

46. The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth

---

[16] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018) https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited August 12, 2024).
[17] *Id.*
[18] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited August 12, 2024).
[19] *Id.*

9

more than 10 times on the black market."[20]

47. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[21]

48. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[22] Defendant did not rapidly report (and has still yet to report) to Plaintiff and Class Members that their PII had been stolen.

49. As a result of the Data Breach, the PII of Plaintiff and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious

---

[20] *Experts advise compliance not same as security*, RELIAS MEDIA (Mar. 1, 2015) https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (last visited August 12, 2024).
[21] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (last visited August 12, 2024).
[22] *Id.*

breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' PII.

50. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

51. Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff and Class Members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

52. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

**CLASS ALLEGATIONS**

53. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

54. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

55. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

56. This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

57. <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of nearly two million Class Members. The Class is sufficiently numerous to warrant certification.

58. <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiff's claims are typical of those of other Class Members because, Plaintiff, like the Class Members, had his PII compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of

the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members that was caused by the same misconduct by Defendant.

59. <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

60. <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

61. <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

   a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

   c. Whether Defendant's storage of Class Member's PII was done in a negligent manner;

   d. Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' PII;

   e. Whether Defendant's conduct was negligent;

   f. Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

      g. Whether Defendant's conduct violated the statutes as set forth herein;

      h. Whether Defendant took sufficient steps to secure consumers PII;

      i. Whether Defendant was unjustly enriched;

      j. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

62. Information concerning Defendant's policies is available from Defendant's records.

63. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

64. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

65. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

66. Given that Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I

### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

67. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 21 through 52 as though fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the Class Members.

14

69. Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

70. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' PII.

71. Defendant had, and continues to have, a duty to timely disclose that Plaintiff and Class Members' PII within its possession was compromised and precisely the types of information that were compromised.

72. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected consumers PII.

73. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers whose PII it scraped. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

74. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

75. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' PII.

76. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

   b. Failing to adequately monitor the security of its networks and systems; and

   c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

77. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' PII within Defendant's possession.

78. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff and Class Members' PII.

79. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

80. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Member's PII. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the consumer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

81. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

82. It was foreseeable that the failure to adequately safeguard Plaintiff and Class Members' PII would result in injuries to Plaintiff and Class Members.

83. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' PII to be compromised.

84. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

85. As a result of Defendant's failure to notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

86. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II

**Negligence *Per Se***
**(On Behalf of Plaintiff and All Class Members)**

87. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 21 through 52 as though fully set forth herein.

88. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

89. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and not complying with industry standards.

90. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

91. Defendant violation of Section 5 of the FTC Act constitutes negligence per se.

92. Class members are consumers within the class of persons Section 5 of the FTC Act were intended to protect.

93. Moreover, the harm that has occurred is the type of harm the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

94. As a result of Defendant's negligence, Plaintiff and the other Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and

restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

## COUNT III

**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and All Class Members)**

95. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 17 and paragraphs 21 through 52 as though fully set forth herein.

96. Plaintiff and Class Members conferred a benefit upon Defendant when Defendant obtained their PII.

97. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff.

98. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the Class Members' PII because Defendant failed to adequately protect their PII.

99. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representatives of the Class and his counsel as Class Counsel;

(b) For an order declaring the Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory damages or penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as the Court deems necessary and appropriate.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 16, 2024                    Respectfully submitted,

By: */s/ Jeff Ostrow*

Jeff Ostrow
KOPELOWITZ OSTROW P.A.
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: cmaccarone@zlk.com

**pro hac vice* forthcoming

*Counsel for Plaintiff*